UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OLD WEST ANNUITY AND LIFE
INSURANCE COMPANY,

                  Plaintiff,

UNITED STATES OF AMERICA; CAMP
COAST TO COAST, INC.; AFFINITY
GROUP, INC.,

                  Intervenor-plaintiffs,

-vs-                                    Case No.  5:03-cv-354-Oc-10GRJ

THE APOLLO GROUP, a California
Corporation; HANS W. SCHULTZ, trustee
of the Shultz Family Trust; TRAVEL
AMERICA, INC., a Delaware corporation;
TENANTS 1, 2, 3, & 4; OLD WEST
ANNUITY AND LIFE INSURANCE CO.;
GUARDIAN CREDIT CORP.; STEVEN M.
WALDMAN; PATRICIA M. WALDMAN;
LAKE COUNTY, FLORIDA; STATE OF
FLORIDA,

                  Defendants.
_____

**O R D E R**

Before the Court is Camp Coast to Coast, Inc.'s and Affinity Group, Inc.'s (collectively, "Coast's") motion for partial summary judgment (Doc. 91) and the United States' response (Doc. 95). Following a hearing on the motion, the parties were permitted to file supplemental memoranda (Docs. 113 & 118), which are also before the Court. The dispute in this case concerns the disposition of funds deposited in the Court's registry

following the court-approved sale of certain real property located in Clermont, Florida formerly owned by The Apollo Group, Inc. ("Apollo"), a debtor of both Coast and the United States. Coast claims an interest in the funds by virtue of a judicial lien. The United States claims an interest in the funds by virtue of tax liens for the unpaid taxes of Apollo and its alleged alter ego, All Seasons Resorts, Inc. ("All Seasons"). In support of its motion for summary judgment Coast argues that the United States' claims are barred by the doctrines of *res judicata* (claim preclusion), collateral estoppel (issue preclusion), and waiver. For the reasons that follow, Coast's motion for summary judgment is due to be denied. Also before the Court is the United States' motion for leave to supplement and amend its complaint in intervention (Doc. 107). For the reasons that follow, the United States' motion is due to be granted in part and denied in part.

## **Background and Procedural History**

This case began in state court as an action by Old West Annuity and Life Insurance Company ("Old West") to foreclose its mortgage on real property in Clermont, Florida ("the property" or "the Clermont property") owned by Apollo and operated as a recreational vehicle park.[1] While the action was pending, Apollo filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio, causing the foreclosure action to be stayed by operation of the automatic stay provision of the Bankruptcy Code. Two years later, Old West obtained an order modifying the automatic stay which permitted it to proceed with the foreclosure of the property. Shortly after that, the United States filed a

---

[1] Doc. 2.

proof of claim in Apollo's bankruptcy. The United States' claim was based on unpaid tax assessments against Apollo in the amount of approximately $21,000, unpaid assessments against All Seasons in excess of $10 million, and the unpaid taxes of a third company, Travel America, Inc. ("Travel America").[2] It is the United States' position that Apollo is the alter ego of both All Seasons and Travel America because all three companies have, among other things, common shareholders, management, and assets. The bankruptcy court modified the automatic stay to permit the United States to assert and enforce its claim in the foreclosure action.[3] Almost immediately thereafter, the United States recorded its notices of tax liens in the Lake County records and secured permission to intervene. Upon filing its complaint in intervention, the United States removed the action to this Court.[4] Thereafter, the Court appointed a receiver for the property.[5]

Meanwhile, Coast filed a proof of claim against Apollo in the bankruptcy court for a judgment Coast obtained against Apollo in California. The total principal and accrued interest on Coast's judgment is currently over $5.5 million.[6] On the same day that the United States was permitted to intervene in the foreclosure action, Coast obtained a bankruptcy court order modifying the automatic stay so that it too could participate in the

---

[2] The record does not reflect the amount of the unpaid assessments against Travel America.

[3] Doc. 107, exh. 2.

[4] Doc. 3.

[5] Doc. 22.

[6] Doc. 101, appendix 0001, at ¶ 11.

foreclosure.[7] Several months later, Coast overcame a challenge by Apollo and successfully domesticated its judgment in Florida.[8] The judgment was recorded in the public records of Lake County about five months after the United States recorded its tax lien notices. Thereafter, this Court granted Coast's motion to intervene.[9]

Following a hearing on the matter, the Court issued an order authorizing the sale of the property by the receiver and directing that the net proceeds of the sale be deposited into the Court's registry.[10] The Order further provided that, in accordance with the stipulation of the parties, all liens would attach to the sale proceeds to the same extent and in the same priority that they attached to the property. The sale yielded over $4.4 million in net proceeds, which were deposited in the Court's registry.[11] Subsequently, the Court granted Old West's motion for summary judgment and directed the Clerk to disburse nearly three million dollars to Old West in satisfaction of its mortgage.[12] Approximately $1.5 million of sale proceeds remain in the Court's registry, far less than enough to fully satisfy both Coast and the United States.

In its complaint in intervention, the United States asserts two bases for its entitlement to the proceeds. First, it claims an interest in the funds by virtue of the liens associated with

---

[7] Doc. 107, exh. 6.

[8] Doc. 101, appendix 0009-10.

[9] Doc. 33. Apollo's bankruptcy case was recently converted into a chapter seven liquidation. Doc. 96. The conversion did not affect the stay modifications. Doc. 94.

[10] Doc. 59.

[11] Doc. 89.

[12] Doc. 97.

4

the unpaid taxes of Apollo (approximately $21,000.00). Second, it contends that it is entitled to the proceeds because of the liens associated with All Seasons' unpaid tax liability (over $10 million dollars). Because of an "inadvertent oversight" the complaint in intervention fails to mention Travel America. In support of its second basis of recovery, the United States advances two claims: (1) that the conveyance of the property to Apollo during All Seasons' bankruptcy was fraudulent; and (2) that Apollo is the alter ego of All Seasons.[13]

## Discussion

### A. Coast's Motion for Partial Summary Judgment

Coast argues that the United States' fraudulent conveyance and alter ego theories are barred by operation of the doctrines of *res judicata* (claim preclusion), collateral estoppel (issue preclusion), and waiver because the United States failed to object to Apollo's 1997 purchase of the property from the bankruptcy estate of All Seasons, Apollo's alleged alter ego.[14]

---

[13] Paragraph 27 of the United States' Complaint in Intervention (Doc. 3) alleges:

> The transfer of the Clermont property to The Apollo Group was made with actual intent to hinder, delay, or defeat creditors of All Seasons Resorts, Inc., including the United States.

Paragraph 25 alleges:

> The Clermont property was placed in the name of The Apollo Group in order to avoid collection of the unpaid federal tax liabilities of All Seasons Resorts, Inc.

[14] Coast does not contest the priority of any of the United States' liens. It does not dispute the validity of the United States' liens for Apollo's unpaid taxes, and it does not challenge the United States' ability to create an issue of fact with respect to whether Apollo was the alter ego
(continued...)

Some background into the circumstances surrounding Apollo's purchase of the property is in order. All Seasons acquired the property in 1984.[15] In July of 1997, All Seasons filed for bankruptcy in the Central District of California.[16] The United States participated in All Seasons' bankruptcy, asserting its claim for unpaid taxes. Following a hearing attended by the United States, the bankruptcy court issued an "Amended Order Approving Sale of Property of the Estate Free and Clear of Liens, Claims and Encumbrances, and Interests."[17] Among the various property sales approved by the bankruptcy court was the trustee's sale of the Clermont property to Apollo. No cash exchanged hands, as Apollo purchased the property by bidding the value of its mortgage interest.[18] The bankruptcy court's order included a finding that "all buyers pursuant [to] 11 U.S.C. § 363(k) [relating to buyers using their lienholds to purchase property from the bankruptcy estate] purchased in good faith. . . ."[19] The United States did not object to the order or take any other action to challenge the sale of the property to Apollo.

The thrust of Coast's motion for summary judgment is that the bankruptcy court's finding that the sale of the property to Apollo from the trustee was made in good faith precludes the United States from arguing that the sale was a sham. Coast argues that,

---

[14](...continued)
of All Seasons.

[15] Doc. 3, at ¶ 16.

[16] Id. at ¶ 17.

[17] Id. at ¶ 18; Doc. 101, appendix 0011-30.

[18] Doc. 101, appendix 0011-30.

[19] Id. at 0014.

under the applicable law, before Apollo's corporate form may be disregarded and Apollo exposed as the alter ego of All Seasons, the United States is required to show not just overlapping operations between the two entities, but also "improper conduct" on the part of Apollo and All Seasons demonstrating a design to mislead creditors or work a fraud.[20] Coast submits that based on the allegations in the United States' complaint in intervention, the United States intends to show the requisite improper conduct through evidence that All Seasons attempted to remove the property from the reach of its creditors by granting Apollo a mortgage interest in the property for inadequate consideration, which interest Apollo then used in its successful credit bid to obtain the property. The United States has not challenged Coast's characterization of its claim. According to Coast, the adequacy *vel non* of consideration for the purchase may not be litigated because the bankruptcy court has determined that the sale was made in good faith.

Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits bars the parties to a prior action from litigating a claim that was or could have been raised in the prior action.[21] "Claim preclusion applies to an order or judgment when four conditions are satisfied. First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second,

---

[20] See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984) (holding that "the corporate veil may not be pierced absent a showing of improper conduct."); Mid-Century Ins. Co. v. Gardner, 11 Cal. Rptr. 2d 918, 923 (Cal. App. 3d Dist. 1992) (holding that corporate veil may be pierced only where "some conduct *amounting to bad faith* makes it inequitable" to respect the corporate form) (emphasis in original). Coast argues that the law of either California or Florida should govern the United States' alter ego claim. The United States suggests that the Court apply federal common law, but represents that there is probably no substantive difference between state law and federal law on this issue. Doc. 95, at n. 10.

[21] Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 319 (1927).

the judgment must be final on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding."[22] With regard to the fourth condition, the Eleventh Circuit has held that "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."[23]

Coast has overlooked an important aspect of the bankruptcy court's order. While the court expressly found that "all buyers pursuant [to] 11 U.S.C. § 363(k) purchased in good faith," later in its order the court expressly stated that it made no finding with respect to the validity of the interests used by the buyers to purchase All Seasons' property. The relevant portion of the sale approval order reads:

> IT IS FURTHER ORDERED that, notwithstanding the foregoing, the Court makes no finding as to the nature of the estate's interest in the assets described above, or as to the extent, validity, or priority of liens, claims, encumbrances against, or interests in such assets, *including the liens asserted by the entities to which the assets are being sold hereunder.*[24]

Therefore, contrary to Coast's assertions, the bankruptcy court did not "expressly ratif[y] the value given by Apollo" nor did it "determine that the transfer of the Lake County

---

[22] In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990) (citations omitted).

[23] In re Piper Aircraft Corp., 244 F.3d 1289, 1296-97 (11th Cir. 2001) (internal quotation and citations omitted).

[24] Doc. 101, appendix 0018 (emphasis added).

8

property from All Seasons to Apollo was supported by adequate consideration."[25] Indeed, such a finding was expressly carved out of the order.

No citation to authority is needed to support the proposition that a judgment cannot preclude a subsequent claim expressly reserved or excluded from the adjudication. It would be a strange result indeed if an order, such as the sale approval order, which expressly declined to adjudicate or make factual findings with respect to the material elements of a particular claim is nevertheless found to extinguish that claim or preclude litigation of the operative facts and issues. This is not to say that *res judicata*, or claim preclusion, only bars claims that were previously raised and adjudicated. That is clearly not the law, as the doctrine precludes all claims that were part of a prior "cause of action" whether or not asserted. This is true where the prior judgment is silent with respect to other potential claims arising from the same nucleus of operative fact. But where a claim is expressly reserved, or where the court in the prior cause expressly declined to make factual findings with respect to the material elements of a claim that could have been put before it but was not, *res judicata* will not operate to bar a subsequent suit predicated on that claim or on the facts expressly left unresolved.[26] Accordingly, *res judicata*, or claim preclusion, is not available.

Coast's attempt to raise collateral estoppel, or issue preclusion, fails for a similar reason. For the doctrine of collateral estoppel to apply, the following four criteria must be

---

[25] Doc. 91 at p. 14-15.

[26] See D & K Properties Crystal Lake v. Mutual Life Ins. Co., 112 F.3d 257, 259-60 (7th Cir. 1997) ("res judicata does not apply when a cause of action has been expressly reserved for later adjudication.").

satisfied: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceedings.[27] It is clear that the issue of the validity of Apollo's mortgage was not "actually litigated" as evidenced by the bankruptcy court's express reservation of any findings in that regard. Accordingly, collateral estoppel, or issue preclusion, is not available.

Waiver is also unavailable. Waiver requires a voluntary relinquishment of a known right.[28] There is no evidence suggesting the United States was aware of the facts underlying its claims at the time the sale approval motion was being considered by the bankruptcy court. Accordingly, the United States could not have voluntarily relinquished its rights.

## B. **United States' Motion to Supplement and Amend its Complaint**

The United States seeks leave pursuant to Fed. R. Civ. P. 15 to supplement and amend its complaint in intervention to do two things: (1) to assert a new claim that Apollo is also the alter ego of a company called, Travel America, Inc.; and (2) to include a request that upon the Court's resolution of all of the claims in this case, the Court refrain from disbursing the sale proceeds and instead transmit the remaining balance to the trustee in

---

[27] I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986).

[28] See, e.g., Brookhart v. Janis, 384 U.S. 1, 4 (1966).

Apollo's bankruptcy for distribution in accordance with the priority established in the Bankruptcy Code.

Although the United States was well aware of the facts giving rise to its claim that Apollo was also the alter ego of Travel America at the time it filed its complaint in state court in October of 2003, due to what it says was an "inadvertent oversight" it failed to present any allegations or assert any claim to recover Travel America's tax liability from the proceeds of the Clermont property. The Eleventh Circuit has held that "[a]lthough '[l]eave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'"[29] To allow the United States to amend its complaint, without any acceptable excuse, some five months after the discovery cut-off and over one and one-half years after it filed its complaint, so that it can assert a claim that Apollo was the alter ego of yet another company and therefore responsible for a new set of tax liens would surely work an injustice on Coast in the form of undue delay and prejudice. Such amendment would open up a new round of discovery well after the expiration of the discovery and dispositive motion filing cut-offs and for no reason other than the United States' "inadvertent oversight."[30] The United States offers no reason why the interests of justice

---

[29] Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (quoting Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000)).

[30] Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002) ("It is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motion."); Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1218 (11th Cir. 2004).

require leave to amend under the circumstances. Accordingly, the motion for leave to amend is due to be denied.[31]

With respect to the motion to amend the complaint to request that the Court disburse the funds to Apollo's trustee following resolution of the claims in this case, the United States explains that the bankruptcy court's orders modifying the automatic stay to allow the parties in this case to proceed with the foreclosure action did not abandon or release the property from the bankruptcy estate. According to the United States, Apollo's trustee estate still holds an interest in the disposition of the sale proceeds. The United States represents that in bankruptcy, post-petition, or administrative claims, receive priority over unsecured claims and that since the trustee may avoid the liens of both the United States and Coast (because they attached after the filing of the bankruptcy petition), the sale proceeds may be used by the trustee to pay administrative claims. One such administrative claim, according to the United States, is the capital gains realized by Apollo through the court-ordered sale of the property in December of 2004. The United States' motion to supplement its complaint is due to be granted.

---

[31] Local Rule 3.05(c)(2)(E) (stating that leave to amend is "distinctly disfavored" after the issuance of the case management and scheduling order).

## **Conclusion**

Accordingly, upon due consideration, it is adjudged that:

(1) Camp Coast to Coast, Inc. and Affinity Group, Inc.'s motion for partial summary judgment (Doc. 91) is DENIED;

(2) the United States' motion for leave to supplement and amend its complaint in intervention (Doc. 107) is GRANTED with respect to its motion for leave to supplement but DENIED in all other respects, and the United States is directed to file its supplemented complaint within ten (10) days from the date of this order; and

(3) the Clerk is directed to return this case to the trial calendar.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 1st day of June, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy