UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OLD WEST ANNUITY AND LIFE
INSURANCE COMPANY,

                    Plaintiff,

UNITED STATES OF AMERICA,

                    Intervenor-plaintiff,


-vs-
                                             Case No.  5:03-cv-354-Oc-10GRJ

THE APOLLO GROUP, a California
Corporation,

                    Defendant.
_____


# O R D E R

This case concerns a dispute over the disposition of funds deposited in the Court's

registry following the court-approved sale of certain real property located in Clermont,

Florida.  The property was formerly owned by the Defendant, The Apollo Group, Inc.

("Apollo"), a debtor of the Intervenor-Plaintiffs United States of America, Camp Coast to

Coast, Inc., and Affinity Group, Inc.[1]  The United States claims an interest in the funds by

virtue of tax liens for the unpaid taxes of Apollo and its alleged alter ego, All Seasons

Resorts, Inc. ("All Seasons").  Camp Coast to Coast and Affinity Group claim an interest

_____

[1]Camp Coast to Coast and Affinity Group are affiliated companies and will be referred to
collectively as "Coast."

in the funds by virtue of a judicial lien.   Apollo is currently in the midst of Chapter 7 bankruptcy proceedings before the United States Bankruptcy Court for the Northern District of Ohio, and a Chapter 7 Trustee has been appointed.

Following a lengthy discovery period, numerous motions for summary judgment, and the resolution of the claims of Plaintiff Old West Annuity and Life Insurance Company ("Old West"), the Court held a pretrial conference on July 20, 2005.  At the conclusion of the pretrial conference, the Court directed the parties to file briefs regarding whether the remaining proceeds from this sale should be returned to the bankruptcy court.  The parties have done so, and this case is now before the Court for consideration of the following motions: (1) the United States' Motion for an Order that Funds be Transferred to Custody of Chapter 7 Trustee (Doc. 133); (2) Coast's and Affinity's Cross-Motion for Summary Judgment (Doc. 138); and (3) Motion on Behalf of Bankruptcy Estate for Transfer of Funds (Doc. 145).  Each motion has been responded to and is ripe for disposition (Docs. 134, 139, 148).  For the reasons discussed below, the Court finds that all three motions are due to be denied.

## Background and Procedural History

I.     The Foreclosure Proceedings

This case began in state court as an action by Old West to foreclose its mortgage on real property in Clermont, Florida ("the property" or "the Clermont property") owned by

Apollo and operated as a recreational vehicle park.[2]  While the action was pending, Apollo filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Ohio, causing the foreclosure action to be stayed by operation of the automatic stay provisions of the Bankruptcy Code.[3]  Two years later, Old West obtained an order modifying the automatic stay which permitted it to proceed with the foreclosure of the property.  Shortly after that, the United States filed a proof of claim in Apollo's bankruptcy.  The United States' claim was based on unpaid tax assessments against Apollo in the amount of approximately $21,000, unpaid assessments against All Seasons in excess of $10 million, and the unpaid taxes of a third company, Travel America, Inc. ("Travel America").[4]  It is the United States' position that Apollo is the alter ego of both All Seasons and Travel America because all three companies have, among other things, common shareholders, management, and assets.  The bankruptcy court modified the automatic stay to permit the United States to assert and enforce its claim in the foreclosure action.[5]  Almost immediately thereafter, the United States recorded its notices of tax liens in the Lake County records and secured permission to intervene.  Upon filing its complaint in intervention, the United

_____

[2] See Doc. 2.

[3] See 11 U.S.C. § 362.

[4] The record does not reflect the amount of the unpaid assessments against Travel America.

[5] See Doc. 133, exh. 2.

3

States removed the action to this Court.[6]  Thereafter, the Court appointed a receiver for the property.[7]

Meanwhile, Coast filed a proof of claim against Apollo in the bankruptcy court for a judgment Coast obtained against Apollo in California. The total principal and accrued interest on Coast's judgment as of June 2005 is over $5.5 million.[8]  On the same day that the United States was permitted leave to intervene in the foreclosure action, Coast obtained a bankruptcy court order modifying the automatic stay so that it too could participate in the foreclosure.[9]  Several months later, Coast overcame a challenge by Apollo and successfully domesticated its judgment in Florida.[10]  The judgment was recorded in the public records of Lake County about five months after the United States recorded its tax lien notices.  Thereafter, this Court granted Coast's motion to intervene.[11]

Following a hearing on the matter, the Court issued an order authorizing the sale of the property by the receiver and directing that the net proceeds of the sale be deposited

---

[6] See Doc. 3.

[7] See Doc. 22.

[8] See Doc. 101, appendix 0001, at ¶ 11.

[9] See Doc. 133, exh. 6.

[10] See Doc. 101, appendix 0009-10.

[11] See Doc. 33. Apollo's bankruptcy case was converted into a chapter seven liquidation. See Doc. 96. The conversion did not affect the stay modifications.  See Doc. 94.

into the Court's registry.[12]   The Order further provided that, in accordance with the stipulation of the parties, all liens would attach to the sale proceeds to the same extent and in the same priority that they attached to the property.  The sale yielded over $4.4 million in net proceeds, which were deposited in the Court's registry.[13]  Subsequently, the Court granted Old West's motion for summary judgment and directed the Clerk to disburse nearly three million dollars to Old West in satisfaction of its mortgage.[14]  Approximately $1.5 million of sale proceeds remain in the Court's registry, far less than enough to fully satisfy both Coast and the United States.

On March 21, 2005, the United States moved to amend and supplement its complaint in intervention in this Court to include a new claim that Apollo is also the alter ego of Travel America, Inc.,[15] and to include a request that upon the Court's resolution of all claims in this case, the Court refrain from disbursing the sale proceeds and instead transmit the remaining balance to the trustee in Apollo's bankruptcy for distribution in accordance with the priority established in the Bankruptcy Code.  The Court denied the United States' request to include a new claim concerning Travel America, Inc., but permitted the United States to supplement its complaint to include its request concerning

---

[12] See Doc. 59.

[13] See Doc. 89.

[14] See Doc. 97.

[15] The United States claimed that it failed to present any allegations or assert any claim to recover Travel America's tax liability in its original complaint due to an "inadvertent oversight." See Doc. 107.

the transfer of funds to the Chapter 7 Trustee.[16]  The Court also denied Coast's motion for

summary judgment on the grounds of *res judicata*, collateral estoppel, and waiver.[17]

    In its supplemental complaint in intervention, the United States asserts two bases

for its entitlement to the proceeds. First, it claims an interest in the funds by virtue of the

liens associated with the unpaid taxes of Apollo (approximately $21,000.00). Second, it

contends that it is entitled to the proceeds because of the liens associated with All

Seasons' unpaid tax liability (over $10 million dollars).[18]  In support of its second basis of

recovery, the United States advances two claims: (1) that the conveyance of the property

to Apollo during All Seasons' bankruptcy was fraudulent; and (2) that Apollo is the alter ego

of All Seasons.[19]  Coast claims an interest in the Clermont property proceeds by virtue of

------

[16] See Doc. 121.

[17] Id.

[18] Although the supplemental complaint in intervention does not assert any claims against
Travel America, Inc. or request relief based on its tax liabilities, the United States did include
several new factual allegations mentioning Travel America, Inc., arguably in violation of the Court's
Order.  See Doc. 126, ¶¶ 20-25.

[19] Paragraph 24 of the United States' Supplemental Complaint in Intervention (Doc. 126)
alleges:

> The transfer of the Clermont property to The Apollo Group, the
> corporation was made with actual intent to hinder, delay, or defeat
> creditors of All Seasons Resorts, Inc., and Travel America, Inc.,
> including the United States.

Paragraph 22 alleges:

> Record title to the Clermont property was placed in the name of The
> Apollo Group, the corporation, in order to avoid collection of the

(continued...)

6

their domesticated California judgment against Apollo.  There is no dispute that the United States has priority over Coast, and should be paid first from the proceeds.

## II.    Recent Bankruptcy Court Proceedings

While the case was pending in this Court, the United States filed an administrative claim in Apollo's Chapter 7 bankruptcy proceeding on March 9, 2005 for the bankruptcy estate's unpaid 2004 income tax liabilities under 11 U.S.C. § 503(b).  As of June 30, 2005, that claim was in the amount of $1,829,112.96, plus interest, an amount that exceeds the remaining proceeds in this Court's registry.  There have been no objections to that claim.

On July 15, 2005, Elaine Greaves, the Chapter 7 Trustee in Apollo's bankruptcy proceeding, filed a motion in the Bankruptcy Court asking for an order clarifying or supplementing the Bankruptcy Court's orders modifying the automatic stay.  In particular, the Trustee wanted to know whether the remaining proceeds from the sale of the Clermont property should be distributed in this Court, or should be returned to the Bankruptcy Court for distribution by the Trustee herself.  On July 27, 2005, the Bankruptcy Court entered an order, stating in part that:

> Neither the Florida real estate owned by the Debtor at the commencement of this bankruptcy case, nor the proceeds received from the sale of said Florida real estate, were abandoned by the Debtor or the Trustee.

---

[19](...continued)
unpaid federal tax liabilities of All Seasons Resorts, Inc., and Travel America, Inc.

> The Bankruptcy Court did not intend for the orders granting the IRS and Coast to Coast relief from the bankruptcy stay to be a grant of a secured interest in the Debtor's real estate which would therefore result in said creditors being granted a priority greater than said creditors were afforded prepetition. Hence, the Bankruptcy Court fully intended to retain jurisdiction with respect to distribution of the property of this estate, and specifically the proceeds received from the sale of the Debtor's Florida real estate.[20]

In response to this order, Coast filed a motion in the Bankruptcy Court pursuant to Rules 9023 and 7052 of the Federal Rules of Bankruptcy Procedure requesting that the Bankruptcy Court issue additional findings and/or alter or amend its order.[21]  In particular, Coast requested guidance from the Bankruptcy Court as to whether its July 27, 2005 order vacated its prior orders modifying the automatic stay, and whether the July 27, 2005 order vacated or altered Coast's lien against the Clermont property.  On August 23, 2005, the Bankruptcy Court issued an order vacating its July 27, 2005 order in its entirety.

On November 7, 2005, the Bankruptcy Court, upon motion of the United States, granted the United States leave to represent the Chapter 7 Trustee in this case.[22]  In its order, the court specifically stated that "it is understood that this Court is not ruling, and has never previously ruled, on the issue of whether § 544(a) grants the estate priority over the

---

[20] See Doc. 133, exh. 1.

[21] See Doc. 140, exh. 1.

[22] See Doc. 145, exh. 1.

lien claim of Camp Coast to Coast Inc., and Affinity Group, Inc."[23]  The Bankruptcy Court further stated that "[a]ny funds that may be recovered in the Florida case by the United States in its capacity as representative of the bankruptcy estate shall be placed in the custody of the Trustee for later distribution pursuant to the Bankruptcy Code and further orders of this Court."[24]

III.    Additional Relevant Procedural History

The Court conducted a pretrial conference on July 20, 2005 in preparation for a non-jury trial to determine the appropriate disbursement of the remaining proceeds in the Court's registry.  During the conference, counsel for the United States argued that this case is comprised of two outstanding issues: (1) whether Apollo is the alter ego of All Seasons; and (2) whether the remaining proceeds in the Court's registry should immediately be transferred to the Bankruptcy Court for distribution by the Chapter 7 Trustee.  The parties agreed that resolution of the second issue: whether to transfer the proceeds back to the Bankruptcy Court, should be addressed first, as it could moot out all other issues in this case, and the Court directed the parties to file briefs on the transfer issue.  Both parties have done so, and the United States has also filed a motion, purportedly on behalf of Apollo's Chapter 7 Trustee, in support of the transfer.

---

[23] Id.

[24] Id.

**Discussion**

The present motions can be condensed into an analysis of two main issues: (1) the purpose and effect of the Bankruptcy Court's orders granting relief from the automatic stay; and (2) the meaning of the term "abandonment" under Chapter 7 of the Code.  The United States, in both its own motion and in its motion on behalf of the Chapter 7 Trustee, argues that the remaining proceeds from the sale of the Clermont property should be immediately transferred to the custody of Apollo's Chapter 7 Trustee because the Trustee never formally "abandoned" the Clermont property, and in turn never formally abandoned the proceeds from the sale of that property.  As such, the United States apparently believes that once Old West's mortgage claim was satisfied, and despite the modification of stay orders which remain in effect, the Court should have transmitted the remaining proceeds to the bankruptcy court for distribution.  Coast, not surprisingly, disagrees, and has put forth a host of procedural and equitable arguments for why the United States is wrong.  Coast has also interpreted the United States' position as an abandonment of the Government's prior positions concerning its tax liens, and therefore seeks summary judgment in its favor.

I.    The Motions to Transfer Funds

    A.    *The Bankruptcy Court's Orders Granting Relief from Stay Remain Valid.*

Typically an automatic stay pursuant to 11 U.S.C. § 362 arises the moment a debtor files for bankruptcy protection and "operates as a stay, applicable to all entities" of all judicial, administrative or other proceedings that were or could have been commenced prior to date the petition was filed, so that the debtor's property can be distributed and/or

protected under the provisions of the Bankruptcy Code.  11 U.S.C. § 362(a)(1).  The stay covers actions to enforce judgments, repossess or foreclose on property, and create, perfect, or enforce liens.[25]   It remains in effect until the bankruptcy case is closed, dismissed or discharged, or until the property at issue is no longer considered part of the bankruptcy estate, whichever first occurs.[26]

 If an interested party demonstrates cause, including the lack of adequate protection of an interest in property, the automatic stay can be terminated, annulled, modified, or conditioned.[27]  When the interested party has a claim or action against real property, the Bankruptcy Court can grant relief from the automatic stay if (a) the debtor does not have an equity interest in the property; and (b) such property is not necessary to an effective reorganization.[28]

Applying this framework, the Bankruptcy Court in this case entered orders on October 1, 2003 and October 2, 2003, granting the United States' and Coast's motions for relief from the automatic stay in order to pursue their claims against the Clermont property.[29]  In particular, the Bankruptcy Court lifted the stay for the United States so that the Government  could "assert and [ ] enforce its claim in the Florida foreclosure action to

---

[25]See § 362(a)(2)-(6)

[26]See § 362(c)(1), (2).

[27]11 U.S.C. § 362(d)(1).

[28]§ 362(d)(2).

[29]Doc. 133, exhibits 3, 5.

the extent permitted by that court."[30]  In so doing, the Bankruptcy Court recognized that the United States "lacks adequate protection on its claim" absent a modification of its stay. However, the Bankruptcy Court limited its ruling solely to the Government's request to modify the stay, stating that it was not expressing "any view whatsoever as to the validity of [the United States'] claim or of its standing to assert that claim in the Florida state court foreclosure action.  Those issues are expressly reserved to other courts having jurisdiction of those issues."[31]

The Bankruptcy Court also granted Coast relief from the automatic stay "to enable Coast to perfect its lien against the Property and to participate in all respects as a party in the Foreclosure Litigation and/or to initiate or participate in any other foreclosure action against the Property."[32]  Before granting Coast's motion for relief from stay, the Bankruptcy Court specifically found held that Coast's interests would be "adversely and irreparably affected if it is not granted relief to permit the modification of the stay."  The Bankruptcy Court further found that the "Debtor has no equity in the Property and the reorganization of Debtor is unlikely, and that therefore, the Property is not necessary for an effective reorganization."[33]

---

[30]Doc. 133, exhibit 3.

[31]Id.

[32]Doc. 133, exhibit 5.

[33]Doc. 133, exhibit 5.

The Bankruptcy Court's orders modifying the automatic stay for the United States and Coast are deemed to be final and appealable at the time they are entered.  Borg-Warner Acceptance v. Hall, 685 F.2d 1306 (11th Cir. 1982); In re Apex Oil Co., 884 F.2d 343 (8th Cir. 1989).[34]  Thus, without an order from the Bankruptcy Court voiding these modification orders, an order granting a party's request for injunctive relief, or an order from this Court or some other court with appropriate jurisdiction reversing the modification orders on appeal, the Bankruptcy Court's orders modifying the stay for the United States and Coast remain in full force and effect.[35]

Upon a review of the record before the Court, it does not appear that any of these situations have occurred.  No party has sought reinstatement of the automatic stay, and no one has requested that the Bankruptcy Court revoke its prior modification orders.  In addition, the Court is not aware of any appeals challenging these modification orders, or

---

[34]See also In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1026 (11th Cir. 1989) (a district court order affirming or reversing a bankruptcy court's grant or denial of relief from an automatic stay consistently has been held by courts to be a final decision reviewable on appeal).

[35]There is no statutory authority in the Bankruptcy Code to permit the reinstatement of an automatic stay once the stay has been lifted. In re Terramar Mining Corp., 70 B.R. 875 (M.D. Fla. 1987).  There are only two ways in which a modification order can be altered or revoked.  One option is through a motion requesting relief pursuant to either Fed.R.Civ.P. 59 or 60, filed by a party in interest. In re Aguiar, 311 B.R. 129 (1st Cir. 2004); In re Bryant, 296 B.R. 516 (D. Colo. 2003). The Bankruptcy Court has already determined that any such motions would be time-barred in this case. See Doc. 140, exhibit A.  Alternatively, the Bankruptcy Court has the authority to grant injunctive relief upon a request by a party in interest, and a showing of extraordinary circumstances following an adversary hearing. 11 U.S.C. § 105.  No one has ever initiated such an adversary proceeding in this case.

any decisions reversing them.[36]   To the contrary, the United States and Coast have repeatedly stated to this Court that the modification orders remain fully enforceable.  In fact, the United States has previously filed with this Court a copy of the Bankruptcy Court's February 2, 2005 order, stating that the conversion of the bankruptcy proceedings from Chapter 11 to Chapter 7 "did not affect the continued vitality of this Court's prior orders modifying the automatic stay."[37]  Moreover, it does not appear that the purposes for which the Bankruptcy Court modified the automatic stay have been fully resolved: the United States is still attempting to enforce its claim against the Clermont property in this Court,[38] and Coast is still participating in the remainder of this foreclosure action.

The only apparent challenge to the modification orders are the motions filed by the United States on its own behalf and ostensibly on behalf of the Trustee in favor of transfer. In making these motions, the Government has been careful not to directly ask for a revocation of the modification awards.   However, if the Court were to grant the Government's requested relief that is exactly what would happen.   Because the modification orders remain in effect, and because the purposes of the modification orders have not yet been satisfied, if the Court were to permit the transfer of the remaining sales proceeds to the Bankruptcy Court (and without any direct order from the Bankruptcy Court

---

[36]The Bankruptcy Court has also previously determined that any appeal of its original modification orders would also be time-barred.  See Doc. 140, exhibit A.

[37]Doc. 94.

[38]The United States has made clear in response to Coast's latest motion for summary judgment that it has not abandoned its tax claim against Apollo, or its alter ego theory.

to do so), the modification orders would be rendered null and void.  The Court is not authorized to take such actions.

Thus, it is clear that the Bankruptcy Court's orders concerning modification of the automatic stay remain valid and enforceable, and that the proceedings in this Court to determine distribution of the remaining sale proceeds from the Clermont property should go forward.  The Court has not been provided with any persuasive or binding authority mandating any different result.[39]  See e.g., In re Heghmann, 316 B.R. 395, 402-03 (1st Cir. 2004) ("orders of the bankruptcy court modifying the stay or finding no violation [of the automatic stay], even if erroneous, are entitled to respect and are not subject to collateral attack.") (internal quotations omitted).

In its transfer motions, the United States also attempts to reinterpret the Bankruptcy Court's modification orders.  According to the United States, the modification orders were only issued to allow Coast, Old West, and the United States the opportunity to protect their interests in the Clermont property by allowing them to record their liens and intervene in the foreclosure proceeding; the modification orders "were not intended to abandon the property altogether to petition and post-petition lien creditors, or otherwise to afford the United States and Coast secured claims for purposes of forcing distribution of surplus

_____

[39]To the extent the United States continues to rely on the Bankruptcy Court's July 27, 2005 Clarification Order, such reliance is misplaced.  The Bankruptcy Court vacated this order on August 23, 2005, and expressly stated that its prior modification orders "stand unmodified and remain valid orders of this Court."  See Doc. 141, exhibit A.

proceeds in a manner that leaves nothing to distribute" in the bankruptcy proceedings.[40]

Such a narrow interpretation of the modification orders cannot be reconciled with the plain

language of the orders themselves.  The orders are completely silent as to their intent with

respect to secured and/or unsecured lien creditors, and with respect to payment of pre-

petition and post-petition claims.  Rather, the modification orders provide, without any

qualification, that Coast and the United States have the authority to file and perfect their

liens and enforce their claims in the foreclosure action, nothing more, nothing less.[41]

Given the broad language of the modification orders, the Court sees no reason to

refrain from distributing the remaining sales proceeds.  There is no indication from the

Bankruptcy Court that it does not wish for the Court to proceed with the distribution of the

remaining sales proceeds, and the Court will not read such an intent into this case.

See Spaude v. Spaude, 112 B.R. 304, 307 (D. Minn. 1990) ("Where a creditor has invoked

remedies and settled its property rights toward enforcing its debt in good faith reliance upon

the termination of the automatic stay in Bankruptcy, the Court should not and may not

invoke its broad equitable powers to void the results of the creditor's actions - even if doing

---

[40]See Doc. 145, pp. 13-14.

[41]The United States also argues that the modifications orders were issued solely to permit two large creditors to protect their interests, "at a time before conversion when there was no trustee or active creditors committee."  See Doc. 133, p. 11.  The United States' position might have more weight if the Bankruptcy Court had not expressly stated that the conversion of Apollo's bankruptcy from Chapter 7 to Chapter 11 did not have any impact on the modification orders whatsoever.

so would enable the debtor to make full use of statutory remedies previously unavailable to him under the Code.").

B.    *The Abandonment Doctrine Does Not Mandate Transfer of the Sales Proceeds*

The United States also argues that the remaining proceeds from the sale of the Clermont property should be returned to the Chapter 7 Trustee for distribution by the bankruptcy estate because the Trustee never formally abandoned the Clermont property. Coast disagrees, arguing that because it has perfected its lien on the sales proceeds, the better solution is to allow this Court to make the final distributions.  The Court agrees with Coast, but for somewhat different reasons.

Pursuant to 11 U.S.C. § 554(a), following notice and a hearing, "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  "The effect of abandonment by a trustee . . . is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate."  In re Enriquez, 22 B.R. 934, 935 (D.Neb. 1982).   Unless a bankruptcy court orders otherwise, property that is not formally abandoned in this manner "remains property of the estate."  11 U.S.C. § 554(d).

The parties agree that the Chapter 7 Trustee in this case has not formally abandoned the Clermont Property, and therefore it remains part of the bankruptcy estate. See In re B.S. Livingston & Co., Inc., 186 B.R. 841, 851 (D. N.J. 1995); In re Ridgemont Apartment Assocs., 105 B.R. 738, 741 (N.D. Ga. 1989).   See also Catalano v.

Commissioner, 279 F.3d 682 (9th Cir. 2002) (abandonment is not implied based on an order lifting the automatic stay to permit foreclosure).  The question remains, however, what impact, if any, the lack of a formal abandonment has on this Court's continued resolution of the foreclosure proceedings.

There is no dispute that the Bankruptcy Court and this Court have concurrent jurisdiction over the Clermont property and its sales proceeds.[42]  However, while the Bankruptcy Court "has the jurisdiction to continue to administer property in which the stay has been previously relieved, *whether* the Court should exercise that jurisdiction depends upon the proposed disposition of the property through the Bankruptcy case and the benefit of such to creditors and other parties."  In re Remington Forest, No. CIV.A. 95-76069, 1996 WL 33340744, * 6 (D.S.C. June 18, 1996) (emphasis in original).  The United States contends that the proposed disposition of the Clermont property sale proceeds through the Bankruptcy Court would be to first pay all Chapter 7 Trustee expenses, including attorneys fees, and then apply any remaining funds to the United States' administrative claim for post-petition income taxes owed by the estate.  There would therefore be no benefit to any creditors or other parties, as the balance of the United States' income tax claim alone is more than the remaining sale proceeds.

In addition, the Bankruptcy Court has already demonstrated its intent to refrain from exercising jurisdiction over the Clermont property through its orders concerning the

---

[42]See Piccolo v.  Dime Savings Bank of New York, 145 B.R. 753, 756 (N.D.N.Y. 1992); In re Ricks, 26 B.R. 134, 137 (D.  Idaho 1983).

modification of the automatic stay.  Both of the modification of stay orders permit the United States and Coast to perfect and enforce their liens against the Clermont property, and to participate fully in the foreclosure proceedings.  The modification orders do not limit Coast's or the United States' efforts in anyway.  For example, if the Bankruptcy Court wanted to retain control over the disposition of the sales proceeds, it could have easily stated in its modification orders that Coast and the United States could only perfect their liens and obtain judgments in their favor, but that they could not take steps to execute those judgments.   Similarly, the Bankruptcy Court could have stated that once this Court determined the priority of each party's claims, and assessed the amount due each party, that the actual distribution of the sales proceeds would be handled in the bankruptcy proceeding.[43]

The Bankruptcy Court, however, did not include such limiting language, and the only time the Bankruptcy Court tried to limit its modification orders, it quickly thereafter vacated that attempt.  Instead, the Bankruptcy Court has repeatedly stated that its modification orders - which give Coast and the United States the ability to fully and completely perfect and enforce their liens against the Clermont property and its sales proceeds - remain valid

---

[43]The Bankruptcy Court's November 7, 2005 order granting the United States leave to represent the bankruptcy estate in this Court does not provide the United States with any legal support on this point.  The Bankruptcy Court simply stated that if the United States prevails in its capacity as representative of the bankruptcy estate, that any funds it receives shall be placed in the Trustee's custody for later distribution.  See Doc. 145, exhibit 1.  The order does not state that the sales proceeds currently in this Court should be distributed in the Bankruptcy Court, and the order does not impede in any way the ability of Coast and the United States to continue with their claims in this Court.

and enforceable.[44]  The parties have engaged in litigation over their claims in this Court for over three years, and the Court does not see any reason to halt the foreclosure proceedings now.

If the Court were to adopt the United States' (and arguably the Chapter 7 Trustee's) position, it would also conflict with the prior determinations of the Bankruptcy Court when it granted the modifications of the automatic stay.  The Bankruptcy Court found that "based upon the amount of the obligations of Debtor to Old West and Coast and the value of the Property as set forth in the Debtor's Schedule of Assets, Debtor has no equity interest in the Property and . . . the Property is not necessary for an effective reorganization."[45]  While this is not a formal declaration of abandonment, this order, along with the Trustee's subsequent silence on the issue, clearly demonstrate their intent to relinquish jurisdiction over the Clermont property in favor of this Court's determination of the interests of Coast, Old West, and the United States.[46]

---

[44]If this was not the case - if the Bankruptcy Court all along intended for the sales proceeds to be returned to the bankruptcy estate as soon as Old West received its payment, then there would have been no need for the United States to intervene in this action in the first place.  The Government could have simply sat back and waited for the funds to return to the bankruptcy estate, and then received payment on its administrative tax claim.  Thus, the United States' own actions in vigorously pursuing its tax liens in this Court run afoul of its arguments in this motion.

[45]Doc. 133, exhibit 5.

[46]See, e.g., In re B.S. Livingston & Co., Inc., 186 B.R. at 859 (where trustee and debtor stipulate that the debtor does not have any equity in the property and the property is not necessary to an effective reorganization, it is arguable that the bankruptcy estate no longer has any interest in the property).  See also Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1520-21 (5th Cir. 1989) (relief from an automatic stay entitles the creditor to (continued...)

20

Moreover, because the modification orders were in effect on the date the parties removed their foreclosure action to this Court, and the orders have remained in effect throughout the entire foreclosure proceedings, it follows that the Clermont property is no longer "property of the estate," even though it was never formally abandoned.  See Piccolo v. Dime Savings Bank of New York, 145 B.R. 753 (N.D.N.Y. 1992).  By modifying the stay, the Bankruptcy Court consented to this Court's concurrent jurisdiction over the Clermont property.  In re Ricks, 26 B.R. 134, 137 (D. Idaho 1983) (the state of affairs following the lifting of stay is essentially one of concurrent jurisdiction).  The Court exercised its concurrent jurisdiction and conducted the foreclosure sale, including directing that Old West receive payment.  All that is now left to do is apportion the remaining proceeds to the two parties left in the foreclosure action - the United States and Coast.

Notably, the United States has not presented a single legal authority for its novel position that the remaining proceeds should be returned to the Bankruptcy Court at this point in the litigation, and the Court has been unable to locate any supportive authority as well.  Rather, the one case the United States cites, Catalano v. Commissioner, 279 F.3d 682 (9th Cir. 2002), deals with the tax implications of a foreclosure sale outside of the bankruptcy proceedings.  In Catalano, the Ninth Circuit Court of Appeals held that a bankruptcy court's order lifting the automatic stay in order to allow a foreclosure sale to go

---

[46](...continued)
realize its security interest in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee).  As in Killebrew, the security interests of Coast and the United States have not yet been realized.

forward did not constitute abandonment of the property by the estate, and therefore any tax liabilities resulting from the sale were part of the bankruptcy estate.  279 F.3d at 686-87.

The issue in <u>Catalano</u> is not implicated in this case; no one is disputing that the tax liabilities from the sale of the Clermont property lie with the bankruptcy estate, and no one objected to the United States' tax claim in the bankruptcy proceeding.  Moreover, the court in <u>Catalano</u> recognized that when a bankruptcy court lifts or modifies the automatic stay, the purpose is to allow collection actions against a particular piece of property to go forward.  <u>Id.</u> at 686.  That is exactly what the Bankruptcy Court authorized in this case, and that is exactly what this Court intends to do as well.[47]

---

[47]The United States' unsupported reliance on 11 U.S.C. § 544 in both its own motion and in its motion for the transfer of funds on behalf of the Chapter 7 Trustee is equally unavailing.  That section provides that the Trustee shall have "the rights and powers of" a judicial lien creditor as of the date of the petition, and gives the Trustee the power to avoid pre-petition liens that are unperfected as of the date the bankruptcy petition was filed, which in this case was April 23, 2001.  <u>See</u> § 544(a), (b)(1).  The United States argues that the Trustee's powers under § 544 operate to avoid Coast's lien.  However, § 544 only applies to liens that arise pre-petition; the Trustee cannot avoid post-petition liens that are created with the express authority of the Bankruptcy Court.  <u>See, e.g.</u>, <u>In re Stoops</u>, 209 B.R. 1, 3 (M.D. Fla. 1997) ("The strong-arm power given to the Trustee by Section 544(a) of the Code was never designed to and does not deal with any transfers other than transfers which occurred prior to the commencement of the case."); <u>In re Berkley Multi-Units, Inc.</u>, 55 B.R. 584, 588 (M.D. Fla. 1985) ("§ 544 deals only with unperfected security interests, liens and transfers which occurred prior to the commencement of a case.").  In this case, the Bankruptcy Court expressly authorized Coast - two years after the bankruptcy action commenced - to perfect its lien and participate in foreclosure actions on the Clermont property.  Accordingly, Coast's lien cannot be avoided by the Trustee under § 544, and other than the United States' belated attempt on her behalf, the Trustee has never tried to do so.

II.     Coast's Cross-Motion for Summary Judgment

Coast also seeks complete dismissal of the United States' Complaint in Intervention, arguing that because the United States is now seeking a transfer of the remaining Clermont proceeds back to the Bankruptcy Court, it has necessarily abandoned its arguments both that it has a perfected tax lien on the proceeds, and that Apollo is the alter ego of All Seasons.  Coast relies on various statements in the United States' motion for transfer in which the United States argues that this Court does not have the authority to elevate creditors to secured status, and that the United States only intervened in this action to assert a lien, not have it perfected.  While it is understandable that Coast is frustrated by the United States' motions to transfer, and the Court agrees that it is an unsuccessful attempt by the United States to evade this Court's jurisdiction, the Court does not read as much into the United States' motion as Coast has.  Rather, it appears that the United States was arguing in the alternative, which it is well permitted to do, and has not abandoned its original arguments and claims set forth in its complaint in intervention. The United States makes this clear in its opposition papers, and the Court finds that the United States' arguments in its motions to transfer, while strained at best, were plausible and do not operate as a voluntary dismissal of its alter ego theory or other arguments in support of its tax liens.

**Conclusion**

Let it not go unsaid that the Court is very much aware of the real motivation behind the United States' motions.  If the United States were to prevail on its current motions, the remaining sales proceeds would automatically be used to satisfy the Government's recently-made administrative claim for the estate's unpaid 2004 income tax liabilities. Because the amount of these unpaid income tax liabilities clearly exceeds the remaining proceeds in the Court's registry, the United States would receive the entire amount, (less Chapter 7 Trustee expenses and attorneys' fees), without having to litigate the question of whether Apollo is the alter ego of All Seasons.  The Court will not now permit the United States at this very late stage in the litigation to forum shop and essentially negate this Court's proceedings,[48] or to use its derivative Trustee standing in such a self-serving manner.[49]

Having resolved the remaining pending motions in this case, and based on the representations of counsel at the July 20, 2005 pretrial conference, the only outstanding

_____

[48]The United States only filed its motion on behalf of the Chapter 7 Trustee, which is nearly identical to its own motion, after Coast pointed out in its Opposition brief that the Trustee was arguably the only entity with standing to seek the transfer of the sales proceeds, and after the Bankruptcy Court vacated its July 27, 2005 order.  However, the Trustee herself has done nothing to reclaim control of the Clermont property, even though she was given time and opportunity by the Bankruptcy Court to consider her options with respect to the property when the bankruptcy proceeding converted to a Chapter 7 proceeding.

[49]Several courts have held that a trustee cannot be compelled, through derivative standing or otherwise, to pursue a course of action that will only serve a single creditor, as opposed to the estate at large.  See, e.g., In re Railworks Corp., 325 B.R. 709, 718 (D. Md.  2005) (a non-trustee § 1123 "estate representative" can only assert trustee claims under § 544 if "a successful recovery . . . would benefit the debtor's estate and particularly the debtor's unsecured creditors.").  Cf. In re Smith Int'l Enters., Inc., 325 B.R. 450 (M.D. Fla.  2005).

issue is resolution of the United States' "alter ego" theory.  It appears that discovery has been completed, the parties have previously filed motions for summary judgment, which the Court has ruled on, and the case is ready to proceed to trial.  Although the Court has regretfully permitted this case to linger for the past several months, that is no longer the case.  It is the Court's intention to proceed with trial and resolve this case completely as soon as possible.

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED that:

1.     The United States' Motion For Order That Funds Be Transferred To Custody of Chapter 7 Trustee (Doc. 133) is DENIED;

2.     Intervenors Camp Coast To Coast, Inc.'s, and Affinity Group, Inc.'s Cross-Motion for Summary Judgment (Doc. 138) is DENIED;

3.     The United States' Motion On Behalf of Bankruptcy Estate For Transfer of Funds (Doc. 145) is DENIED; and

4.     Pursuant to separate notice, the Clerk is directed to set this case for a non-jury trial during the term commencing December 4, 2006.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 25th day of September, 2006.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy, Courtroom Deputy

25